IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 4, 2020 Session

## STATE OF TENNESSEE v. COLTON DAVON HATCHETT

**Appeal from the Circuit Court for Henderson County**
**No. 18144-1  Roy B. Morgan, Jr., Judge**

_____

**No. W2020-00335-CCA-R3-CD – Filed March 24, 2021**

_____

A jury convicted the Defendant, Colton Davon Hatchett, of the sale of 0.5 grams or more of methamphetamine and the delivery of 0.5 grams or more of methamphetamine.  The trial court sentenced the Defendant to fifteen years as a Range II, multiple offender for each conviction, merged the convictions, and ordered the Defendant to serve his sentence consecutively to his sentence for a prior conviction.  On appeal, the Defendant challenges the sufficiency of the evidence to support his convictions and the trial court's imposition of consecutive sentences.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

M. Todd Ridley, Assistant Public Defender – Appellate Division (on appeal); and George Morton Googe, District Public Defender, and Hayley Johnson, Assistant District Public Defender (at trial), for the appellant, Colton Davon Hatchett.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The Defendant was charged with selling and delivering methamphetamine to a confidential informant with the Lexington Police Department on two different occasions.

For the first transaction, which occurred on August 24, 2017, the Defendant was charged with one count of the sale of 0.5 grams or more of methamphetamine and one count of the delivery of 0.5 grams or more of methamphetamine. For the second transaction, which occurred on September 7, 2017, the Defendant was charged with one count of the sale of methamphetamine and one count of the delivery of methamphetamine. Following a trial, the jury acquitted the Defendant of the charges related to the September 2017 transaction and convicted him of the charges related to the August 2017 transaction. We summarize the evidence presented at trial related to the August 2017 transaction.

**Trial**

At trial, the confidential informant testified that he had two prior convictions for domestic assault and two prior crack cocaine convictions in Missouri. At the time of trial, he was incarcerated on a pending domestic assault charge, and he denied that the State had made any promises related to the pending charge in exchange for his testimony. The confidential informant explained that he approached narcotics officers about serving as a confidential informant because he was using drugs, was around others who were using drugs, and wanted to leave that lifestyle. The confidential informant acknowledged using crack cocaine. He denied using methamphetamine but said he knew others who did. He was paid one hundred dollars for each drug transaction made while serving as a confidential informant.

The confidential informant testified that prior to the August 2017 transaction, he had seen the Defendant in the area and had spoken to him briefly, but they did not associate with each other. On August 24th, the confidential informant arranged the drug transaction by contacting the Defendant through a neighbor. Officers gave the confidential informant one hundred dollars in cash to purchase drugs. The officers searched him prior to the transaction and placed a video recording device on his person. The video recording of the transaction was entered as an exhibit at trial, and the confidential informant testified about the transaction as the recording was played to the jury.

The video began as the confidential informant was inside a car with police officers and was providing the officers with directions. The car stopped, and the confidential informant exited and walked down the road to a trailer park. He approached a home, knocked on the door, and stepped inside where a man and a woman whom the confidential informant later identified as his neighbor were present. The confidential informant and the man walked outside and talked. While much of the conversation was not discernable, the confidential informant told the man to "eyeball" it and "I don't care if it's short." Although the confidential informant did not specifically identify the Defendant at trial as the man in the video, the confidential informant acknowledged while watching the video that he

purchased drugs from the Defendant and testified that he gave the money provided to him by the officers to the Defendant.

In the video, the man reentered the home while the confidential informant waited outside for several minutes. The man came back outside and bent or leaned down at a step. When the man arose, the confidential informant immediately went to the step, bent or leaned down, turned around, and walked away from the home. When asked whether the Defendant gave him the drugs when the Defendant came outside, the confidential informant replied, "No, it was on the steps." The confidential informant stated that he did not get the drugs directly from the Defendant's hand but picked the drugs up off the steps after the Defendant came back outside. The confidential informant identified himself in the video leaning over and picking up the drugs. He affirmed that he purchased drugs from the Defendant both during this transaction and during a controlled buy a few weeks later.

After leaving the home and while walking down the road, the confidential informant called the officers, who drove to the area and retrieved him. The confidential informant testified that he gave the drugs to Investigator Ricky Montgomery.

Lexington Police Investigator Ricky Montgomery testified that prior to the transaction, an officer searched the confidential informant to ensure that he did not possess any drugs. Investigator Montgomery stated that he did not make any promises to the confidential informant in exchange for his cooperation and did not provide assistance with his criminal issues. Although the confidential informant was equipped with a video recording device, Investigator Montgomery was unable to monitor the equipment as the transaction occurred. Once the transaction was completed, the confidential informant called Investigator Montgomery, who drove to the area to retrieve him. Investigator Montgomery testified that the confidential informant immediately gave him the bag of drugs once the confidential informant entered the vehicle. Investigator Montgomery sent the bag of drugs to the Tennessee Bureau of Investigation ("TBI") for testing.

TBI Special Agent Rachel Strandquist tested the drugs and determined that the bag contained 0.69 grams of methamphetamine. Investigator Montgomery testified that he gave the confidential informant one hundred dollars, expecting him to purchase one gram of methamphetamine. Investigator Montgomery agreed that drug dealers commonly provide a user with a smaller quantity of drugs than the amount purchased.

At the conclusion of the trial, the jury convicted the Defendant of one count of the sale of 0.5 grams or more of methamphetamine and one count of the delivery of 0.5 grams or more of methamphetamine.

**Sentencing Hearing**

- 3 -

At the sentencing hearing, the State entered the Defendant's presence report as an exhibit. According to the presence report, the twenty-nine-year-old Defendant had prior convictions for misdemeanor theft, stalking, selling marijuana, public intoxication, resisting arrest, and felony vandalism. He also had two prior aggravated assault convictions and two prior convictions for driving on a suspended or revoked license. His first criminal convictions were committed at the age of twenty-one. Prior to committing the instant offenses, he had a term of community corrections revoked. He acknowledged frequent use of marijuana and denied committing the instant offenses.

The State argued during the sentencing hearing that the Defendant was on probation when he committed the instant offenses. According to the presence report, in December 2016, the Defendant received an effective six-year sentence for convictions of stalking and two counts of aggravated assault with 180 days to be served in confinement and the remainder to be served on community corrections. On October 17, 2018, after the Defendant was indicted for the instant offenses, his community corrections sentence was "transferred" to probation. On February 15, 2019, prior to his trial on the instant offenses, his probation was revoked. During the sentencing hearing, defense counsel stated that the Defendant's probation was revoked after he failed a drug screen.

In sentencing the Defendant, the trial court considered the evidence presented at trial, the parties' arguments, the presence report, the principles of sentencing, and the nature and characteristics of the criminal conduct. The trial court found, and the parties agreed, that the Defendant was a Range II, multiple offender. The trial court applied three enhancement factors: (1) the Defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; (8) the Defendant, "before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; and (13) the Defendant was released on probation at the time that the felonies were committed.[1] T.C.A. § 40-35-114(1), (8), (13). The trial court noted the Defendant's continued denial of any wrongdoing and found that no mitigating factors applied. The trial court sentenced the Defendant to fifteen years in confinement for each conviction and merged the two convictions. The trial court noted the Defendant's age, reviewed his criminal history as reflected in the presence report, found that the Defendant "is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). The trial court found that "it would be appropriate under these

---

[1] Although the State argued and the trial court found that the Defendant was on probation when the instant offenses were committed, the presence report reflects that the Defendant was actually serving a sentence of community corrections when the offenses were committed and that he was later "transferred" to probation. Nevertheless, enhancement factor (13) is applicable even when a defendant is serving a sentence of community corrections when felony offenses are committed. *See* T.C.A. § 40-35-114(13)(E).

circumstances to order" the Defendant to serve his sentence consecutively to his sentence for his prior aggravated assault convictions.

The Defendant filed a motion for a new trial, which the trial court denied. The Defendant then filed a notice of appeal to this court.

## ANALYSIS

### I. Sufficiency

The Defendant challenges the sufficiency of the evidence to support his convictions, arguing that the evidence failed to establish the "bargained-for offer and acceptance" of a sale or that he delivered the drugs to the confidential informant. The State responds that the evidence is sufficient to support the convictions. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

It is an offense to either knowingly deliver or sell a controlled substance. T.C.A. § 39-17-417(a)(2), (3). A person acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the

conduct or that the circumstances exist." T.C.A. § 39-11-302(b); *see State v. Cody Darand Marks*, No. M2018-00020-CCA-R3-CD, 2018 WL 6992553, at *4 (Tenn. Crim. App. Nov. 13, 2018). "[A] sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002) (citing *State v. Phil Wilkerson*, No. 03C01-9708-CR-00336, 1998 WL 379980, at *3 (Tenn. Crim. App. July 9, 1998)). "One who accepts payment in exchange for property is involved in a sale." *Id.* at 510-11 (citing *Phil Wilkerson*, 1998 WL 379980, at *3). The sale or delivery of 0.5 grams or more of methamphetamine is a Class B felony. T.C.A. § 39-17-417(c)(1).

When viewed in the light most favorable to the State, the evidence presented at trial established that the confidential informant contacted his neighbor to arrange a drug transaction with the Defendant. Prior to the meeting, officers searched the confidential informant to ensure that he did not possess any drugs. The officers gave the confidential informant one hundred dollars to purchase one gram of methamphetamine, equipped him with a video recording device, and drove him to a location near the home where the transaction occurred. When the confidential informant entered the home, a man and a woman whom the confidential informant identified as a neighbor were inside. The confidential informant and the man stepped outside and began talking. While the Defendant argues on appeal that the confidential informant did not specifically identify the Defendant at trial as the man in the video, the confidential informant testified at trial as the video was shown to the jury and specifically described his actions and the actions of the Defendant, thus, establishing the Defendant as the man shown in the video.

The confidential informant testified that he gave the money provided to him by police officers to the Defendant. In the video, the confidential informant told the Defendant to "eyeball it" and "I don't care if it's short." The Defendant reentered the home while the confidential informant waited outside. After several minutes, the Defendant came back outside and leaned over near the steps. Once the Defendant arose, the confidential informant immediately went to the steps and leaned over the same area. The confidential informant testified that when he leaned over, he picked up the bag of drugs from the steps. He then walked away from the home and down the road and called the officers. While the Defendant did not hand the drugs directly to the confidential informant, a reasonable jury could infer from this evidence that the Defendant placed the drugs on the steps for the confidential informant to retrieve.

The confidential informant gave the bag of drugs to the officers immediately upon making contact with them. Testing revealed that the bag contained 0.69 grams of methamphetamine. We conclude that this evidence is sufficient to support the Defendant's convictions for the sale and delivery of 0.5 grams or more of methamphetamine.

- 6 -

## II. Sentencing

The Defendant asserts that the trial court erred in ordering him to serve his sentence for his drug convictions consecutively to his sentence for a prior conviction. The State responds that the trial court properly exercised its discretion in imposing consecutive sentences. We agree with the State.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). This court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The standard of review for consecutive sentencing is abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862. The appealing party bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

To impose consecutive sentencing, the trial court must find by a preponderance of the evidence at least one of seven factors listed in Tennessee Code Annotated section 40-35-115(b), one of which isthat "[t]he defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). Consecutive sentencing also is "guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting T.C.A. §§ 40-35-102(1), -103(2)).

The Defendant maintains that the trial court erred in finding that he had an extensive history of criminal activity, arguing that his "relatively light history is not nearly substantial enough to justify a finding of extensive criminal behavior." In determining that the Defendant had an extensive history of criminal activity, the trial court reviewed the Defendant's prior criminal convictions, which included four prior felony convictions and six prior misdemeanor convictions, and noted that the Defendant was only twenty-nine years old. His sentences involving release into the community had been revoked on two occasions, and he was under such a sentence when he committed the instant offenses. We

conclude that the trial court properly found that the Defendant had an extensive history of criminal activity. *See* T.C.A. § 40-35-115(b)(2).

The Defendant contends that the trial court failed to find that consecutive sentences were "justly deserved in relation to the seriousness of the offense" and that the effective sentence was the "least severe measure necessary to achieve the purposes for which the sentence is imposed." *See* T.C.A. §§ 40-35-102(1), -103(4). The Defendant relies upon this court's opinion in *State v. Biggs*, in which the majority of a panel of this court held that the trial court erred in imposing partial consecutive sentences resulting in an effective sentence of forty-four years for the Defendant's convictions on four counts of aggravated robbery, two counts of theft by shoplifting, and one count of attempted aggravated robbery. *State v. Biggs*, 482 S.W.3d 923, 924, 927-28 (Tenn. Crim. App. 2015). This court determined that the trial court properly found that the defendant had an extensive history of criminal activity. *Id*. at 927. However, the majority concluded that the sentence was effectively a sentence of life imprisonment and was not "'justly deserved in relation to the seriousness of the offense'" and that the effective sentence was not the "'least severe measure necessary to achieve the purposes for which the sentence is imposed.'" *Id.* at 927-28 (quoting T.C.A. §§ 40-35-102(1), -103(4)). The majority noted that the robberies were committed with a plastic gun, that none of the victims were injured, that two of the victims knew that the gun was plastic, that the defendant was forty-nine years old, that he had no prior convictions for violent offenses, and that he was already serving a twelve-year sentence for a prior conviction. *Id.* The court also noted that even without consecutive sentences, the defendant would remain incarcerated until the age of seventy. *Id.* at 928.

However, in declining to extend *Biggs* in subsequent cases, this court has recognized that "[a] trial court's sentencing determinations are fashioned to the individual offender." *State v. Jamie Paul Click*, E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *22 (Tenn. Crim. App. March 30, 2017), *abrogated on other grounds by State v. Patterson*, 564 S.W.3d 423 (Tenn. 2018); *see State v. Austin Dean*, No. E2015-01217-CCA-R3-CD, 2016 WL 5864631, at *6 (Tenn. Crim. App. Oct. 7, 2016). In the present case, the trial court recounted the Defendant's prior convictions and the young age at which he had amassed his convictions. The presentence report reflects that between the ages of twenty-one and twenty-nine, the Defendant committed six misdemeanor offenses and six felony offenses, including the offenses in the instant case. On multiple occasions, the Defendant had failed to comply with the conditions of sentences involving his release into the community. The trial court considered the sentence that the Defendant was already serving and noted that the Defendant continued to deny committing the offenses in the instant case. Although the Defendant faced a maximum sentence of twenty years as a Range II, multiple offender convicted of a Class B felony, the trial court imposed a mid-range sentence of fifteen years. *See* T.C.A. §§ 39-17-417(c)(1); 40-35-112(b)(2). In sentencing the Defendant, the trial court stated that it considered the principles of sentencing and the circumstances of the

offense, and the trial court found that consecutive sentences "would be appropriate under these circumstances." We cannot conclude that the trial court abused its discretion.

## CONCLUSION

Upon reviewing the record, the parties' briefs and arguments, and the applicable law, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE